## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**NOAH WESSINGER, III**

**CIVIL ACTION**

**VERSUS**

**NO. 16-443-SDD-RLB**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION**

## <u>NOTICE</u>

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on July 18, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**NOAH WESSINGER, III**

**VERSUS**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION**

**CIVIL ACTION**

**NO. 16-443-SDD-RLB**

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Noah Wessinger, III ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1).  Having found all of the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal.  *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…").  For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income on June 21, 2013 alleging that he became disabled on December 31, 2010 because of a disabling condition, namely high blood pressure, heart attack, stroke, diabetes, and pain in his right side, leg, arm, and shoulder. (Tr. 12, 136, 143, 166).  Plaintiff's application was eventually

denied by an Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 25-56) before issuing an unfavorable decision on October 6, 2015. (Tr. 9-24). Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 4, 2016. (Tr. 1-6). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is

less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.   ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the

3

claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1.    Plaintiff had met the insured status requirements of the Social Security Act through September 30, 2012.

2.    Plaintiff had not engaged in substantial gainful activity since December 31, 2010.

3.    Plaintiff suffered from the following severe impairments: hypertension, diabetes, obesity and history of a cerebral vascular accident.

4.    Plaintiff did not meet or medically equal any listed impairment.

5.    Plaintiff retained the residual functional capacity (RFC) to perform light work that avoids all climbing of ladders, ropes and scaffolds as well as more than occasional balancing, stooping, kneeling, crouching, crawling and climbing stairs or ramps.

6.    Plaintiff is capable of performing past relevant work as a resident care aide.

7.    Plaintiff has not been under a disability from December 31, 2010 through October 6, 2014.

## IV.    DISCUSSION

Plaintiff argues the ALJ committed two errors.  First, Plaintiff argues the ALJ erred with regard to the weight given to the opinions of Dr. Banks. (R. Doc. 8 at 4, 6-8).  Second, Plaintiff argues the ALJ erred in his Residual Functional Capacity ("RFC") analysis and conclusion. (R. Doc. 8 at 4, 8-11).  Essentially, Plaintiff argues that the ALJ improperly assigned the weight to

4

be given to Dr. Banks's opinion and ignored evidence of Plaintiff's leg and knee problem and obesity, and that these errors caused further error in the ALJ's finding with regard to the RFC. (R. Doc. 11 at 2). The Court disagrees as to both arguments, and finds the ALJ's decision to be supported by substantial evidence and the proper legal standards to have been applied.

A.    **Weight Given to Treating Source**

The ALJ concluded, after "consider[ing] all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," that he would "not grant Dr. Bank's[sic] opinion controlling weight." (Tr. 17, 19). The Court finds that substantial evidence supports this conclusion.

A physician qualifies as a treating source "if the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s).'" *Huet v. Astrue*, 375 Fed. Appx. 373, 376 (5th Cir. 2010) (quoting 20 C.F.R. § 404.1502) (alteration in original). Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician).

According to the Fifth Circuit's decision in *Newton*, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453.[1] Those criteria provide that the ALJ consider: (1) the length of the

---

[1] The *Newton* decision references the version of 20 C.F.R. § 404.1527 in effect at that time, which was amended, in pertinent part, effective March 26, 2012. The analogous section in the current version is 20 C.F.R. § 404.1527(c)(2).

treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2). "The ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Daniels v. Colvin*, 2014 WL 4186785, at *9 (E.D. la. Aug. 22, 2014) (citing *Clary v. Barnhart*, 214 Fed. App'x 479, 482 (5th Cir. 2007).

In guiding the ALJ's analysis, 20 C.F.R. § 404.1527 also states the following:

> (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

> (2) Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. § 404.1527(d)(1)-(2).

Additionally, "[f]or good cause shown, the ALJ may discount, or even disregard entirely, the opinion of the treating physician." *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999) (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)). Good cause is shown when, for example, the "statement as to disability is so brief and conclusory that it lacks strong persuasive weight, is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)

(citations omitted). "The administrative fact finder is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Sibley v. Astrue*, 2011 WL 7274895, at \*9 (E.D. La. Dec. 15, 2011) (citing *Scott*, 770 F.2d at 485). *See also Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("We have recognized that it is proper for an ALJ to accord a treating physician's opinion less deference when the treating physician offers an additional assessment that undermines the reliability of the opinion relied upon by the claimant.").

While there are some records from brief visits or stays at Baton Rouge General Hospital Mid City, Dr. Banks is the only treating physician of Plaintiff in the record. (Tr. 271-310, 327-348). *See also Clayborne v. Astrue*, 260 Fed. App'x 735, 737 (5th Cir. 2008) ("Thus, isolated visits to different hospitals and clinics, such as those cited by Appellant, do not constitute treating sources and are not entitled to special weight.").

On the Physician's Evaluation of Ability to Function form (Tr. 329-331) completed by Dr. Banks on July 17, 2014, after the application for disability had already been filed, Dr. Banks circles "NO" when asked whether he feels that Plaintiff "is capable of performing full-time work activity, be it sedentary, light or otherwise on a sustained basis." (Tr. 331). Significantly, however, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)). Further, in listing the diagnoses, Dr. Banks enumerates hypertension, right side weakness, and stroke, but makes no mention of obesity, pain, or reduced heart function. (Tr. 331).

However, the rest of the record, including Dr. Banks's own records and the Plaintiff's testimony, supports the ALJ's conclusion that the Plaintiff is able to return to the past relevant

7

work of a resident care aide.   The medical records of Plaintiff being seen by Dr. Banks begin on November 11, 2010 for a blood pressure follow up and noting a light stroke in 2010. (Tr. 346). On July 7, 2011, Plaintiff saw Dr. Banks for a diabetes and blood pressure follow up, wherein Dr. Banks noted full range of motion in Plaintiff's back, musculoskeletal system, and extremities. (Tr. 308). The same range of motion findings were noted on September 6, 2011, October 7, 2011, November 10, 2011, December 9, 2011, January 6, 2012, February 1, 2012, March 2, 2012, May 2, 2012, June 1, 2012, August 1, 2012, October 1, 2012, November 28, 2012, January 31, 2013, April 1, 2013, May 1, 2013, July 1, 2013, August 30, 2013, October 23, 2013, December 20, 2013, February 27, 2014, April 23, 2014, and June 23, 2014. (Tr. 306, 304, 302, 300, 298, 296, 294, 291, 289, 287, 285, 283, 281, 279, 277, 275, 273, 341, 339, 337, 335, and 334, respectively).

Dr. Banks's records also reflect that Plaintiff saw him on November 11, 2010 and January 7, 2011 for blood pressure follow ups (Tr. 346 and 345, respectively), and on March 31, 2011 and April 18, 2011 for bronchitis and a bronchitis follow up (Tr. 344 and 343, respectively). Plaintiff was seen approximately every two months by Dr. Banks for a period of three years, and at no point did Dr. Banks note any functional limitation as a result of pain, obesity, hypertension, diabetes, reduced heart function, or the light stroke Plaintiff suffered.

Plaintiff complained of left foot pain on September 6, 2011, but nothing in the records show any additional testing performed, diagnosis given, or further complaint by Plaintiff. (Tr. 306). Plaintiff complained of right foot pains on October 7, 2011, but again, nothing in the records show any additional testing performed, or diagnosis given and, notably, Dr. Banks did not note Plaintiff complaining of continued left foot pain. (Tr. 304). On November 10, 2011, Plaintiff saw Dr. Banks and there is nothing in that record regarding Plaintiff complaining of left

8

or right foot pain. (Tr. 302).  On February 1, 2012, Dr. Banks first assesses calcifying tendonitis of the shoulder, but notes full range of motion in Plaintiff's extremities and there is nothing in the record revealing the basis of this assessment, i.e., whether Plaintiff was complaining of pain, weakness, numbness, or limited range of motion. (Tr. 296).  In fact, the reason for the February 1, 2012 appointment was noted as sinus infection and medication refill. (Tr. 296).

On May 2, 2012, Dr. Banks notes "continued back pain," but there is no originating record of back pain. (Tr. 291).  Further, on May 2, 2012, Dr. Banks first assesses sprain/strain of the SI ligament, but again, there is no record of a patient complaint leading to that assessment, no record of additional laboratory or diagnostic testing performed, and the records continue to indicate a full range of motion. (Tr. 291).  Sprain/strain of the SI ligament continues to be assessed from May 2, 2012 forward, excepting June 1, 2012, with no additional records of complaints, additional testing, or limitations in range of motion.

Dr. Banks did not record a complaint by Plaintiff of pain again until November 28, 2012 when he notes "continues to have lower pain." (Tr. 283).  Plaintiff is prescribed Lortab Tablet, 10-500 mg, 1 tablet as needed for pain, but there is no record of additional laboratory or diagnostic testing performed, and the records continue to indicate a full range of motion. (Tr. 284).  Outside of May 2, 2012 and November 28, 2012, Dr. Banks does not record any complaint of pain in any of the other bi-monthly visits over the span of three years.  Further, outside of the July 17, 2014 Evaluation of Ability to Function (Tr. 329-331), Dr. Banks never notes right side weakness as a complaint by Plaintiff or based on an assessment.

Other than the March 30, 2012 appointment, from February 1, 2012 on the records reflect an assessment of calcifying tendonitis of the shoulder without a record of any related patient complaint of pain, laboratory or diagnostic tests, or limited range of motion until December 20,

2013. (Tr. 339).   Dr. Banks does not record any complaint of knee pain until April 23, 2014. (Tr. 335).  Pain in Plaintiff's groin is not complained of until June 23, 2014. (Tr. 334).

Plaintiff filed his Application Summary for Disability Insurance Benefits on July 15, 2013, citing a disability date of December 31, 2010, but the alleged impairments Plaintiff raises with the ALJ appear nowhere in the record until December 20, 2013, almost three years after the alleged onset date, and five months after the application for disability. Further, the medical records do not show any additional laboratory or diagnostic tests performed or ordered by Dr. Banks, nor do they reflect any limitation in range of motion.  In fact, noted in Plaintiff's Field Office Disability Report dated July 15, 2013 is the following: "He stood frequently, as he said that his right leg, arm and shoulder hurt when he sat long. [H]as not had treatment for same." (Tr. 163).

The ALJ did not merely "adopt[] the opinions of the state-agency medical consultants" as the Plaintiff suggests. (R. Doc. 8 at 7).   In addition, procedural perfection in administrative proceedings is not required so long as the substantive rights of a party have not been affected. *Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (citing *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005).  *Newton* requires, in the absence of competing first-hand medical evidence, such as the case is here, the ALJ consider the factors laid out in 20 C.F.R. § 404.1527(c)(2), which are the following: (1) the physicians length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Newton*, 209 F.3d at 456.  So long as the ALJ considered each of the *Newton* factors, a detailed analysis is not required. *See Cortez v. Astrue*, 2011 WL 3701936, at *9 (N.D. Tex. Aug.

5, 2011) (citing *Newton*, 209 F.3d at 455-57) ("Moreover, although the ALJ was not required to give a detailed analysis of the *Newton* factors, he nevertheless implicitly acknowledged each factor in his decision.").

At the outset, the ALJ cites the pertinent regulations that guide the analysis of a treating physician's opinion. He notes that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p" and that he considered opinion evidence "in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 17). As to the first three factors, it is apparent that the ALJ was aware of the examining and treatment relationship between Plaintiff and Dr. Banks. The ALJ goes through Plaintiff's treatment history with Dr. Banks in detail, including the month and year of visits to Dr. Banks, and the findings of Dr. Banks at each visit. (Tr. 15-17). As to factor six, the ALJ also acknowledges that Dr. Banks was "claimant's primary care physician." (Tr. 15).

Regarding factors four and five, the ALJ states, "the weight of the evidence, including his own physical exam findings, does not support the Doctor's opinions." (Tr. 19). The ALJ's discussion of Dr. Banks's treating history reveals the inconsistence between his medical records and the Physician's Evaluation of Ability to Function form (Tr. 329-331). After the ALJ summarizes Dr. Banks objective medical records, he goes on to consider both the Plaintiff's testimony and his function report, and includes in this discussion reference to various abilities as well as limitations. (Tr. 18). The ALJ, having considered the objective medical records, and the Plaintiff's testimony and function report, then provides specific reasons for why he does not grant Dr. Banks's opinion controlling weight. Namely, the ALJ states the following:

> As for the opinion evidence, Dr. Banks described limitations in Exhibit 5F that would prevent the claimant from performing any competitive employment. However, the weight of the evidence, including his own physical exam findings, does not support the Doctor's opinions. The Doctor stated that the claimant is unable to stoop at all during a workday and that he would be unable to sustain full-time work activity. However, as noted, the Doctor reported in serial physical exams that the claimant had full range of motion in his back and extremities. The Doctor reported no evidence of any motor, sensory or reflex deficits.

(Tr. 19). The court finds the ALJ's methods sufficient. *See Daniels v. Colvin*, 2014 WL 4186785, at *9 (E.D. La. 2014) ("The ALJ must review the entire record, resolve conflicts in the evidence and state specific reasons for her credibility findings, supported by the evidence."); *Young v. Barnhart*, 287 F. Supp. 2d 905, 910 (N.D. Ill. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("If the ALJ decides not to accord controlling weight to the treating physician's opinion, he must 'minimally articulate his reasons for crediting or rejecting evidence of disability.'").

Lastly, the Plaintiff is incorrect in his suggestion that the ALJ put Plaintiff in the position of having to "defend" the doctor such that there is no need to address this argument. Plaintiff states, "[w]hat is the basis for this questioning of the claimant by accusing the doctor of being wrong and then substituting the doctor's opinion with his own?" (R. Doc. 8 at 8). This conclusion, however, stems from Plaintiff's own mis-quotation of the testimony. Plaintiff writes that the ALJ stated, "I know but what *he has* told you is wrong because I don't really see any problem with the –" (R. Doc. 8 at 8) (emphasis added). However, what the transcript actually shows is that the ALJ said, "I know, but what *has he* told you is wrong because I don't really see any problem with the –" (Tr. 32) (emphasis added). Thus, rather than stating that Dr. Banks is wrong, the ALJ is continuing his line of questioning trying to figure out, independent of obesity, what Dr. Banks told Plaintiff was wrong with his legs because the ALJ did not see any diagnoses as to Plaintiff's legs in the objective medical record. (Tr. 32). In other words, the ALJ did not

stated that Dr. Banks was wrong, but inquired as to what Dr. Banks told Plaintiff was wrong with his legs, if not Plaintiff's weight. Plaintiff's response is that Dr. Banks said the problem with his legs was his weight. (Tr. 32).

In short, there is substantial evidence in the record, which evidence is referenced and weighed by the ALJ, to support his conclusion that the opinion of Dr. Banks was not to be afforded controlling weight. The ALJ found that other evidence of record, including claimant's own testimony and the other objective medical records of Dr. Banks, did not support the degree of limitations Plaintiff alleges, or the severity of restrictions and work abilities to which Dr. Banks concluded on July 17, 2014. Thus, there is substantial evidence to support the ALJ's conclusion and his decision will not be reversed on this ground.

### B.    Determination of Residual Functional Capacity and Ability to Perform Past Relevant Work

The ALJ is responsible for determining a claimant's residual functional capacity (RFC). *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination the ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the claimant's ability, despite any physical and mental limitations. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("The inquiry here is whether the record, read as a whole, yields such evidence…"). However, the ALJ may not establish physical limitations or lack of limitations without the support of medical evidence. *Patterson v. Astrue*, No. 08-13, 2008 WL 5104746, at *4 (N.D. Miss. Dec. 1, 2008). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F .3d 31, 35 (1st Cir. 1999) (citation omitted). The ALJ must

"consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza*, 219 F.3d at 393.

Using his determination of Plaintiff's RFC, the ALJ concluded that Plaintiff failed at step four because he could perform his past relevant work (PRW). Past relevant work "is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). Information about the "demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy" will also be considered, among other things. 20 C.F.R. § 404.1560(b)(2); *see also* SSR 82-61 (a claimant is not disabled if he or she retains the RFC to perform (1) the "actual functional demands and job duties" of a previous job; or (2) the "functional demands and job duties of the occupation as generally required by employers throughout the national economy"); *Carter v. Heckler*, 712 F.2d 137, 141 (5th Cir. 1983) (considering claimant's testimony of her previous work along with the Department of Labor's description of that type of work).

Based on the records before the Court and the ALJ, there is substantial evidence to support the ALJ's finding that Plaintiff retains the RFC to perform his past relevant work. The ALJ performed a detailed review of the objective medical records in order to determine that Plaintiff's severe impairments are hypertension, diabetes, obesity and history of a cerebral vascular accident. (Tr. 14-16). In so finding, the ALJ notes:

> The medical record contains reference to right shoulder pain and bilateral knee pain. However, there is no evidence of any anatomical deformity, loss of motion in the back or extremities or any focal neurological defects. There are no radiographic imaging studies that show degenerative changes in any of the claimant's joints and there are no blood tests indicating an inflammatory arthritis. Therefore, the undersigned finds that these conditions are not medically determinable impairment.

(Tr. 16). Substantial evidence supports this conclusion. In fact, the only evidence of any physical limitation in mobility is Plaintiff's subjective testimony, which is insufficient to support a finding of impairment substantial enough to warrant disability benefits. *See, e.g., Prince v. Barnhart*, 418 F. Supp. 2d 863, 868 (E.D. Tex. 2005) ("the only evidence of bone spurs is plaintiff's subjective testimony. By definition, that is insufficient to establish an impairment.").

Plaintiff's complaints of pain, and difficulty walking or standing, in and of themselves not impairments, would only be relevant to the extent Plaintiff argues that the ALJ failed to properly consider Plaintiff's obesity. (R. Doc. 8 at 10-11). While the ALJ did not specifically discuss obesity, he did carefully review and weigh all of the purported limitations resulting from Plaintiff's obesity. *See* SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002) ("An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.").[2] From what the Court can surmise, giving Plaintiff the benefit of interpretation as his testimony is not abundantly clear, Plaintiff reports that his legs hurt, his knees are bad, references his hip and groin, living with pain in his right side (although this is reported in connection with the light stroke in 2010), an inability to bend well or walk or stand for too long, and lack of strength in his legs. (Tr. 30-37). The overall theme portrayed by Plaintiff is pain as a result of his weight.

On this point, the case of *Ferguson v. Sec'y of Health & Human Servs.*, 919 F. Supp. 1012 (E.D. Tex. 1996), is instructive. There, the court provides the following guidance:

---

[2] Plaintiff suggests that the ALJ did not address this process. (R. Doc. 10 at 10). However, the fact that the ALJ did not cite the Ruling is not dispositive of whether the ALJ considered it as a practical matter. *See, e.g., Giles v. Astrue*, 433 Fed. App'x 241, 249 (5th Cir. 2011) ("He did not discuss each factor listed by the Appeals Council, but his decision need not do so."); *Daniels v. Colvin*, 2014 WL 4186785 at *9 (E.D. La. Aug. 22, 2014) (citing *Clary v. Barnhart*, 214 Fed. App'x 479, 482 (5th Cir. 2007) ("The ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility."); *Prince v. Barnhart*, 418 F. Supp. 2d 863, 872 (E.D. Tex. 2005) ("Thus, ALJ Jarrett was not required by circuit law to articulate reasons for rejecting plaintiff's subjective complaints, and, consequently, the court cannot find lack of substantial evidence under the circuit's per se rule.").

> Generally, a plaintiff's subjective testimony of pain must be considered. *Parfait v. Bowen*, 803 F.2d 810, 813 (5th Cir. 1986); *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981). The Social Security Act requires, however, that a plaintiff's statements concerning pain be corroborated by objective medical evidence of an impairment which could reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C.A. § 423(d)(5)(A); 20 C.F.R. § 404.1529; *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988). Once such an impairment is established, the ALJ must inquire into the intensity and the persistence of the symptoms and the effect on the capacity to work.

*Ferguson*, 919 F. Supp. at 1021.  In *Ferguson*, the ALJ examined the medical records and found that "none of the medical evidence proffered was indicative of a condition so severe as to be likely to produce pain matching the intensity of which plaintiff complained." 919 F. Supp. at 1021. The ALJ in *Ferguson* went on to scrutinize the plaintiff's daily activities, noting that plaintiff's own testimony suggested she "could dress herself, including buttoning a blouse and putting on earrings; complete personal hygiene activities involving manual dexterity such as brushing teeth and hair; cook several meals daily; wash dishes by hand; do the laundry, including folding; tend to the house, including dusting, mopping, and making beds; drive; do the grocery shopping, and unload multiple bags from the car simultaneously; and sit for church services lasting on average 2 ½ hours." *Id*. This is substantially similar to the testimony elicited from Plaintiff by the ALJ in this case, and as reflected in the Function Report filled out by the Plaintiff as to his daily activities.  In concluding, the *Ferguson* court states, "[t]he ALJ's findings regarding plaintiff's daily activities, coupled with the lack of any medical evidence to contraindicate light work, support his finding that plaintiff is not disabled and possesses residual functional capacity for performing at least light work." 919 F. Supp. at 1022.[3]

---

[3] *See also Garcia v. Colvin*, 622 Fed. App'x 405, 409 (5th Cir. 2015) ("In this case, however, the ALJ considered Garcia's reports of pain, but determined that 'the claimant's subjective complaints are inconsistent with the objective medical evidence' and Garcia's own assessment of her reported daily activities. Under our court's precedent, so long as the ALJ gave due consideration to Garcia's report of her pain—and he did—his eventual functional determination was not reversible error."); *Ramirez v. Colvin*, 606 Fed. App'x 775, 779 (5th Cir. 2015)

The same is true here. The ALJ considered obesity insofar as he considered the Plaintiff's subjective complaints of pain and limitations, including the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (Tr. 18).  For the same reasons the Court finds there to have been substantial evidence to support the weight assigned to Dr. Banks's opinion above, the same finding as to Plaintiff's subjective testimony is warranted here.  The ALJ went through a detailed review of the objective medical records, as well as the Plaintiff's subjective testimony and his Function Report.  In so doing, the ALJ concluded, "[t]he undersigned finds that the claimant does have limitations related to the above-noted impairments. However, his testimony is not sufficient to establish limitations beyond those included in the above-noted residual functional capacity given the objective medical record, the prescribed course of treatment and the claimant's daily activities." (Tr. 18).  Substantial evidence supports this conclusion and the Plaintiff is incorrect in suggesting the ALJ failed to consider Plaintiff's obesity.

Plaintiff completed a Function Report with the Social Security Administration wherein he indicated that he wakes up during the night due to pain, but that he can dress, bathe, shave, and feed himself, use the toilet himself, and care for his own hair, prepares food for himself, cleans, washes dishes and does laundry, goes outside every day travelling by walking, driving a car or riding in a car, shops in stores for food, and that he can pay bills, count change, handle a savings account, and use a checkbook or money orders. (Tr. 187-189).  Plaintiff notes that his condition affects lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing (Tr. 191), but these limitations are not reflected in the remainder of his responses.  This

("Here, the ALJ carefully weighed Ramirez's subjective complaints against contrary medical evidence and Ramirez's testimony regarding her daily activities. Therefore, in choosing to discount Ramirez's subjective complaints, the ALJ applied correct legal standards and made a permissible choice based on substantial evidence.").

is similar to the testimony elicited from Plaintiff at the administrative hearing. (Tr. 30-52). Plaintiff testifies that he weighs 313 pounds (Tr. 31); has pain in his legs, hip, and groin (Tr. 31); has bad knees, which is noted by the ALJ as having no supporting evidence in the medical records (Tr. 31); has high blood pressure and is diabetic (Tr. 33); had a light stroke in 2010 (Tr. 33); tendonitis in his right shoulder (Tr. 34); he cannot "bend that good" (Tr. 36); and he cannot "stand up that long" (Tr. 37).

Notwithstanding the impairments noted by Plaintiff during his hearing, Plaintiff also stated that he can shower and dress himself (Tr. 35); he can fix himself something to eat (Tr. 35); he can use the microwave (Tr. 35); he can wash his dishes (Tr. 35); has parties at his house for his grandchild (Tr. 38); and goes to church and church events (Tr. 39).  The ALJ also questioned Plaintiff regarding his past work history, including his past work as a resident care aide at the Harmony Center. (Tr. 43-47).  Plaintiff described the position in response to questions posed by the ALJ, which included direct staff care, supervision, and preparing and serving food. (Tr. 43-45).  Plaintiff communicated to the ALJ his belief that he had some sort of immune system problem during his time at that job, apparently due to poor hygiene of the residents, but there is no reflection of that anywhere in the record, medical or otherwise.  When the ALJ asked Plaintiff directly whether, removing the immune system problem from the equation, he could do his job as a resident care aide, Plaintiff replied, "Could I do it now? Probably can, you know." (Tr. 46). When asked for audible clarification on whether he could continue to be a resident care aide, Plaintiff responded, "Yes. Yes. Yeah." (Tr. 47).

As the Fifth Circuit stated in *Davis v. Shalala*, 1995 WL 153247, at *1 (5th Cir. 1995) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), "[t]he claimant has the burden of proving that he or she is disabled within the meaning of the Act. To be entitled to benefits, the

claimant must demonstrate not only that she suffers from some impairment, but also that she is 'incapable of engaging in any substantial gainful activity.'").  Plaintiff's own testimony fails in meeting his burden.

Beyond that, the ALJ also sought further guidance from the Vocational Expert ("VE") at the administrative hearing.  The ALJ asked whether Plaintiff could do any of his past relevant work if it was "light, occasional climbing of ladders, ropes, scaffolds; frequent climbing of ropes and stairs; unlimited balance, stoop, kneel, crouch, and crawl." (Tr. 53).  The VE responded that "[t]he resident care job as performed by the claimant would fall within the hypothetical but not as done in the general economy."  The VE also concluded that the Plaintiff's past resident care aide position would accommodate "light; no climbing of ladders, ropes, scaffolds; only occasional climbing of ramps, stairs; all other postural occasional." (Tr. 53). So, under two hypotheticals, the VE concluded that a person with the stated limitations could perform Plaintiff's past relevant work as a resident care aide.

Given the record before the ALJ and the testimony of the Plaintiff and VE, the ALJ concluded that Plaintiff is able to perform his past relevant work as a resident care aide, assigning it a light exertional level as actually performed by Plaintiff. (Tr. 52).  The only evidence in the record tending to support Plaintiff's argument as to the propriety of the ALJ's RFC conclusion is the single answer on the July 14, 2014 Evaluation which conflicts with the rest of the objective medical records and the Plaintiff's testimony at the administrative hearing. The Court finds there was substantial evidence to support the conclusion of the ALJ and the proper legal standards were applied, such that the ALJ's decision will also not be reversed on this ground.

V.    **CONCLUSION**

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on July 18, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**